et al., 2015, 1765. Mr. Jacobs, when you're ready. Good morning, your honors. May it please the court. This case is before the court because the board fundamentally misunderstood Beckmann's novel solution to what is called the Knox first on claim construction, second on written description for Gandhi's claims, and third on the patentability of Beckmann's claims. Could I understand, with respect to the Gandhi claims 12 to 17, I guess. Yes, your honor. Was there a determination that these claims corresponded to the count? Yes, your honor. All of the claims that were in the interference, which were claims 3 through 17, four of the claims have dropped out because they weren't corresponding to the count. Well, wouldn't, in order to get priority, wouldn't you have to show that you had written description support for the count? In other words, it seems to me that the PTO, the board here, was looking to see whether there was written description support for Gandhi's claim rather than written description support for the count. It may be that you have to have both, but don't you have to have written description support for the count? Yes, your honor, but that's a different issue. Written description support for the count is used to determine who is the senior party, and in this case, Gandhi was given priority back to 2002. They were designated the senior party for purposes of the count, but support under 112 first paragraph written description for a claim is based on the current specification. Although the board did say that all of Gandhi's claims 3 through 17 were part of the interference, the argument that we presented before the board and is on appeal as well is that certain of those claims, the claims that are issued now, those claims don't have written description support. Those claims being which ones of Gandhi's that you're focusing on? All of the 10, 11, 16, and 17 on what I'll discuss as the minimizing step, and then claims 12 through 17 on the transitioning step. So the written description issue with respect to the two categories of Gandhi claims is different, right? That's true, your honor, yes. So when we're looking at the Gandhi claims separate from the count, or are we looking to see whether there's written description support for the count in the Gandhi specification? Your honor, the count is not of relevance at this point. Those claims are part of the interference, and neither party has challenged that on appeal. What's at issue is a simple... Well, then it seems to me if you look at the Gandhi claims and just ask whether there's support in the Gandhi specification for the Gandhi claims, that there is support for 12 to 17 of the Gandhi claims because it talks about a transitioning process rather than talking about its being a separate step. That seems to me your problem. I mean, it seems to me quite true that there's no support in the Gandhi specification for the count, but there seems to be support in the Gandhi specification for the Gandhi claims 12 to 17 if you don't worry about whether they correspond to the count. Well, your honor, we would respectfully disagree about the written description support in the Gandhi specification for two reasons. First of all, your honor, under the adjuvant decision from this court, when a host specification, in this case the Beckman 605 patent, the claims are to be construed in light of the Beckman specification. And our argument, your honor, on those claims is that when you construe claims 12 through 17... But I don't even have to look at the Beckman specification to construe the claims. On their face, the claims, the Gandhi... I'm just talking about Gandhi claims 12 to 17, don't say anything about a separate third step. Well, your honor, on the plain language of the claims, we would also disagree. We would disagree for a couple of reasons. The transitioning, your honor, in claims 12 through 17 is described, number one, as being between the other steps. And second, in the claim limitation, it says that the step has to be completed. Completing is the word that's used. And we would argue that even with the plain language of the claims, that that transitioning and completing have to indicate that they are separate and distinct from the two-step process of just providing a lean exhaust gas and a rich exhaust gas that are described in Gandhi specification. I understand what you're saying. And further, your honor, the claims should be construed in view of Beckman specification. And we believe that the board erred under Agilent in not really construing them in a way that's understandable because the board construed them citing the Beckman specification, the Gandhi specification, a declaration submitted during the prosecution history of the Gandhi prosecution, and from an expert in the interference, Dr. Harrell. With respect, your honors, to- Let me ask you a question about the obvious determination with respect to the Beckman claims. Yes, your honor. There's a determination that all of these are obvious over the prior, different prior arc with respect to claims one and two and three and four. But what's the matter with the board's determination that three and four were obvious over the prior arc? Your honor- Why is that not supported by substantial evidence? Your honor, there are two problems. First of all, we believe that the board completely misconstrued the claims so that the alleged substantial evidence was applied to the wrong claim construction. We believe a proper construction- With respect to three and four? Yes, your honor. We believe that a proper construction of the Beckman claims- What was the claim construction error with respect to three and four? I understand you argue that there's a claim construction error with respect to one and two, which may be correct. But with respect to three and four, I thought the board assumed a separate third step with the control of the time and the composition. Well, your honor, I believe you're referring to the Cernilla reference, which was combined with a publication of- I'm talking for the moment just about the claim construction with respect to three and four. It seemed to me- Correct me if I'm wrong. I thought with respect to three and four, the board had construed those claims to require a separate third step with predetermined time and composition. That is right, your honor. That is right, your honor. The error in substantial evidence to address your honor's question has to do with the Cernilla reference. As your honor might recall, the Cernilla reference discloses an engine, and then it discloses what they call two exhaust system components, elements 32 and 34. Element 32, based on a reading in the specification, it's not clear what it is. Gandhi's position is that it should be deemed to be a three-way catalyst, and that element 34, which is downstream in terms of the way the exhaust flows, downstream of element 32 must be a lean NOx trap or LNT. We've argued, your honor, that because both elements 32 and 34 are merely called exhaust system components, that there's actually no way of telling what component 32 is. We actually think that Gandhi got it backwards. They said, because a three-way catalyst is an exhaust system component, is one among the categories of exhaust system components, element 32 must be a three-way catalyst, and therefore the gas that is supplied to element 34 is predictable or knowable. However, when you look at the specification, your honor, we believe that the generic description of exhaust system component is not enough to tell you what that element is. In fact, if you took Gandhi's argument in this regard to its end, both elements 32 and 34, you would not be able to definitively say what they are. We don't believe that Cernula actually discloses what is provided in terms of the chemical composition of the exhaust gas to element 34, which has been argued is a lean NOx trap. We would point out that when Dr. Harold, Gandhi's asking his deposition, if you could tell what the input to a exhaust system component is, based on the exhaust gas passing through an unknown component upstream, that you can't tell how that second component would behave. So we believe, your honor, that there isn't substantial evidence based on a review of Cernula. Okay, but just assume hypothetically we were to disagree with you on that and we decided to affirm the board with respect to claims three and four and the obvious determination. At the same time, we were to agree with you that the board misconstrued Beckman claims one and two, and that would result in a remand. But on the remand, why wouldn't the board then find that one and two were also obvious based on the same theory that had been applied to claims three and four? Your honor, there's a couple reasons. One reason is there's testimony in the record from Dr. Croker, who was Beckman's expert, that even if you interpret it, Cernula, consistent with how Gandhi has asked for it to be interpreted, that there wouldn't be evidence in this so-called third step that Gandhi asserts is in Cernula, that the lean NOx trap would be predominantly filled with the exhaust gas in that third step. When you go through the step, sort of the stepping... That's the difference between claim one and three? That's one of the differences between the claims, your honor. But I thought you said in your brief that claims three and four were narrower than claims one and two. That's a fair characterization, your honor, yes. But why doesn't that lead to the conclusion that if claims three and four are obvious, so are claims one and two? Your honor, I wouldn't say you could directly say that claim three is in all respects narrower than claim one. I would say it is generally narrower. Claim one talks about the lean NOx trap being predominantly filled with the exhaust gas during the third phase. But what claim three says is that there's a predetermined period. In other words, the person who sets up the controls for the engine sets a period. That period could change the amount of gas from the third step that's in the lean NOx trap at a particular time. In some ways, the claim is narrower, but in some ways, the claim may not be because the predetermined period could be such that the lean NOx trap may not be predominantly filled with gas during the third step. It could be 45% filled or 55% filled. The claim doesn't have limitations in that regard. Mr. Figg, if you want to save some rebuttal time. Yes, your honor. Thank you. We will save it for you, Mr. Figg. Thank you, your honor. May it please the court. I think the starting point here is the claim construction. And you really have to go back to claim three of Gandhi, which is also claim one. Beckman. The board focused on the plain language of the claim. I think anyone who reads the board's opinion realizes that where the board had its big problem with Beckman's claim construction, was it simply as inconsistent with the plain and unambiguous language of the claim. This is all really confusing, as most interference cases are. But it seems to me that there are two written description issues in the interference proceeding. One is a written description issue as to whether the count is supported by the written description in Gandhi here. And it seems to me that the count is not supported by the written description in Gandhi. But if we look at the Gandhi claims, and they have different language than the count. And based on the claims, there does seem to be a pretty good argument that there is written description support for the language of the claim. So what are we supposed to do? Are there two separate written description issues in these interference proceedings? One about the written description for the count and one for the claims? I mean, what's going on? I think I understand, Judge Dyke. The written description for claims three and four, or Beckman's claims one through four, really is not before the court. Because all of those claims have been held invalid. Now, the claim construction is relevant to the invalidity holding. But the written description issue is really for claims 12 through 17. Suppose we say, okay, you've got to have written description support for the count in the Gandhi specification. You agree that if the count is construed the way Beckman wants it to be construed, that there is not written description support in the Gandhi specification for that view of the count? Now, if the limitations that Beckman urges should be read into those claims were there, then as the board found, the claim would not be supported with those limitations in. Would not be supported by the Gandhi specification. That's right. With those limitations read in. The board said that and we haven't disagreed with that. But the point is, it was improper to try to read those limitations in. What Beckman is clearly doing is trying to read embodiments into the claim. And I wanted to focus the court on a couple of points in the specification to illustrate that that's the point. If you look at the Beckman specification. Can I cut through before you get into the detail? I don't want to stop you from going there because it's important. But is it fair in a kind of your position and the board's position with respect to claim construction of claim three of Gandhi is, as copied, is that the transition that necessarily occurs between step one and step three, i.e. step two. One and two. I know, we go from one to three to two. But using the numbers that are used in the briefs. But that necessarily will satisfy all the requirements that Beckman is saying are necessary to satisfy step three. In between one and two. I don't think that's what we have said, Your Honor. And I don't think that's what the board said. The only way Beckman can defend these claims, which it chose to draft very broadly, is to say that you have to construe claim two, excuse me, step three, the transitional supplying step, as a separate and distinct step that is controlled both in terms of duration and composition of the exhaust gas. Right. I understand that. And your position is separate and distinct has no meaning here. It's not in the claim, etc., etc. But aren't you really just saying that what we've got here is necessarily a transition between one and two. That is, and in the course of that transition, everything in the claims is, with respect to step three, is satisfied. Exactly. Okay, that's what I was saying. I'm sorry, I might have misunderstood. Well, I might not have expressed it very clearly. I would like to focus on one thing in the specification that I think illustrates that Beckman is trying to read something into the preferred embodiment, contrary to a lot of this work. It seems to me there are two separate issues here with respect to the construction. One is whether the count, Beckman claim one, has a separate third step. And it seems to me very hard not to read Beckman claim one as having a separate third step. And the other question is whether claim one incorporates this composition and period of time control, which it seems to me there is not such a good argument for reading that into claim one since it's explicit in claim three. But if we were to conclude that Beckman claim one does at least show a separate and distinct third step, then the board's claim construction was wrong and we'd have to send it back to have them consider whether Beckman claims one and two were obvious, right? I think that's right. I think this is very important, Your Honor. Beckman essentially says, look at figure two of its patent. And it's saying you have to limit the claims to what's in figure two, which does indeed show that the third step is a separate step. What the board said is, no, I don't see anything like that in the claim language. You can switch from lean to rich and there's going to be a transition that occurs when you make that switch and there's going to be an intermediate exhaust gas during that transition. What Beckman is saying, no, you have to actually adjust it so that you have this flat level in there. But I think what's very important is to look at what Beckman's specification actually says about figure two. It says, and I'm quoting in column eight around line 10, the diagram presented in figure two diagrammatically depicts a preferred time curve of the air fuel ratio lambda. This is nothing more than a preferred embodiment. If you look at the statement of the invention, starting in the bottom of column one over to column two, and again, it's repeated in column four, the invention, it says, according to the invention, the method is, and they use precisely the same language that's in the claim. They chose to claim this broadly. Suppose we object to your contention about the claim construction of Beckman claim one, and we found that it does require a separate and distinct third step. Where does that leave us with respect to Gandhi claims 12 to 17? Well, Gandhi claims 12 through 17 have different language. The board pointed out that all claim 12 requires is that there's a transition from lean to rich, and that you complete that transition before you get to full rich. Your argument is that you would construe the Gandhi claims 12 to 17 as having a different scope than the count. Yes, and the board said that. You would construe it that way if, as I understand it, we should reject your argument with respect to claims one and two of Beckman. Because as I understand your argument with respect to claims one and two of Beckman, and by extension claims three of Gandhi, that the transition that satisfies that claim, as you say it should be read, is the same transition that satisfies claim 12 of Gandhi, right? Yes. There is an additional requirement, though, in claim one about the nitrogen trap being predominantly filled. That's not in claim 12. Isn't it your argument that that will naturally occur with the transition? That's what our expert has shown, that it naturally occurs. Gandhi claim three is identical to Beckman claim one, but not claim 12. That's right. But getting to your point, Judge Dyke, because I think this really is sort of the, almost everything somehow hinges on this. The invalidity positions, the written description positions. Beckman's position depends on reading into the claim a requirement that in claim one, the so-called third supplying step is separate and distinct and controlled in terms of composition and duration. No, I don't think that's true. I think there are two separate issues here. One is whether it requires a separate and distinct step, and the other one is whether it controls composition and duration. No, I don't. I'm sorry. I respectfully submit that I think what Beckman's position is that controlled means you're controlling it in terms of composition and duration, and that's what figure two shows. They're arguing both, but I think they're two separate arguments, and I think that the board made two claim constructions here. One, with respect to claim one, one that it's not a separate and distinct step, and two, that it doesn't have to control duration and composition. The second one is, it seems to me, a much more powerful argument given that the difference between claim one of Beckman and claim three of Beckman. Well, no. Claim one of Beckman simply says a third supplying step where you have an intermediate exhaust gas, and that the LNT is predominantly filled before you terminate that intermediate step. That's what claim one says. What claim three says is that it puts some additional detail on that, that step three occurs over a predetermined period of time. There's a constant exhaust gas and so forth, but key to both of these things. Beckman has argued for claim one, or claim three of Gandhi, that it's figure two. It requires that you adjust the engine mixture to an intermediate step, and that you control its duration and its composition. That's where the board had a problem. The board said, you could have drafted the claim that way. You simply didn't. Let me ask you this way. Do you agree that Beckman claim one, put aside the control of the composition and duration, do you agree that Beckman claim one talks about a separate and distinct third step? No. Why not? The reason why is this. What the board said, and I think the board is absolutely right on this, all the third supplying step in claim one says is that between steps one and two, there is an exhaust gas going into the LNT that has less oxidizing agents than in the first step, and less reducing agents than in the second step. The board said, the claim doesn't tell you how to accomplish that. You can accomplish that simply by transitioning from lean to distinct adjustment in the air fuel mixture ratio going into the engine. Beckman is arguing, you do have to make that. The board said, that's just not in the claims. Beckman's specification uses exactly the same language to describe the invention. But claim one talks about a separate third step. I'm sorry? Beckman claim one talks about a separate third step. It doesn't really call, it says you supply with a mixture rich in oxidizing agents, and you supply with a mixture rich in reducing agents, and then between the two, you supply with a mixture that has, that is intermediate between those two. Why isn't that a separate step? Just based on the claim language. It uses the word supplying, which is exactly the same word used in what is conceded to be the first two steps. Yes, but here's the difference. I had trouble understanding Beckman's position myself, I have to admit. What Beckman means when he says that the steps are separate and distinct, is he means that you have to control the engine. You have to, you have a mixture going into the engine that has, that it's a lean mixture. And then what Beckman says is you now have to adjust that mixture, not to rich conditions, but to a point that is intermediate between lean and rich. And then you adjust it again to get to rich. That's what Beckman means by separate and distinct, that's what figure two illustrates, and that's what the board said is simply not in the claim. So your position, as I understand it, is that all you have to do is switch from lean to rich, and necessarily on its way from lean to rich, you'll have a transitioning step that will lead to a transition. Is that right? No. Yes. Yes, it's right, but let me try to parse it a little bit, Judge Bryson. The necessarily part of your question gets to written description. It gets to whether that necessarily occurs in the Gandhi method, which was an issue for written description of claim three. It's not an issue for written description of claim 12. But the first part of your point is exactly right. What the board said is the claim does not tell us how we have to get to that intermediate mixture. It doesn't say we have to make an adjustment. It says we can get to that intermediate mixture simply by transitioning from lean to rich. And during that transition, you are necessarily, as you said, going to have a period. And will you also necessarily have a situation in which the NOx catalytic converter is predominantly filled with exhaust gas delivered in the step? Our experts said yes, but that is only an issue for claims that have now been held invalid because of prior art. It's not an issue for claims 12 and the progeny of claim 12, because those claims don't require that. Now, I would point out that Beckman's expert, Dr. Croker, acknowledged, and the board referred to this in its opinion, he acknowledged that when you switch from lean to rich, what you're going to have is a constantly changing exhaust gas over the range between the bounds of the lean and the bounds of the rich. You're going to have this transition. Thank you, Mr. Fager. I think your time is exhausted. I'm sorry? Your time is exhausted. Oh, I'm sorry. Thank you, Your Honor. Mr. Jacobs has a little rebuttal time. Thank you, Judge Lurie. A few points, Your Honors. Fundamentally, the problem with Gandhi's position is that it eviscerates the entire purpose of Beckman's invention. Beckman's specification repeatedly talks about the NOx breakthrough problem. In particular, I direct Your Honors to column two, lines 15 to 33, and more particularly, lines 27 to 28. This mixing, which Gandhi's counsel referred to as what naturally occurs if you immediately switch from lean to rich, the specification says, this mixing briefly results in relatively powerful reactions, and the specification goes on to say, those are what cause NOx breakthrough. So what do you mean by, well, I'm sorry, finish your point. And so the representation from Gandhi that Beckman's claims are somehow limited to the single embodiment that's figure two is not right, Your Honors. The specification is replete with discussion that the entire purpose of what Beckman did, Beckman was aware of the prior art. The published version of an earlier Gandhi application was cited during the prosecution history of the was to eliminate this NOx breakthrough problem that is inherent in Gandhi's direct switching from lean to rich. It's inherent in the other prior art references of record also. What is it that constitutes separate and distinct? What is it that's necessary to happen to make the steps separate and distinct? Is it enough, for example, that you have a transition between lean to rich, which occurs over some period of time that's, let's say, slower than the minimum necessary to conduct the transition. Would that be a separate and distinct step? I don't think so, Your Honor. What is it about separateness and distinctness that you think the patent is limiting to? And I'll answer your question, Judge Bryson, with reference to Gandhi's specification briefly, if I might. The transition in Gandhi is nothing more than what happens in the lean NOx trap when there's lean gas that comes in, and then effectively a wave of rich gas comes in. Okay. And in between, in the course of that, you're going to get a mix that'll be less lean, more rich, than the lean stage, and less rich, more lean, than the rich stage, right? But that mixing, Your Honor, is exactly what Gandhi acknowledges causes NOx breakthrough. Maybe so, but why isn't it fair to characterize that transitional period as a separate step, or at least as a step? And if that isn't a step, what is it that your view of separate and distinct requires in addition to the transition? Well, may I finish, Your Honor? I think I'm out of time. There are a couple things, one, again, and we've briefed this extensively, the grammar and structure of Beckman's claims make it clear that they have to be. As Judge Luria asked opposing counsel, there are three supplying steps, and to treat the third supplying step as somehow less distinct than the first two supplying steps doesn't make sense, because then you wouldn't have a lean step or a rich step, you would just have a mishmash of gas. But I'm looking to you for what does separateness mean in this context? Separate means, there's a couple ways to answer it, Your Honor. One, the claim says between. Between implies that something is before and something is after. Also, when you look to the wherein clause, and I'll just refer to claim one, when you look to the wherein clause, it also includes the word between to say that it comes after the lean step and before the rich step, and it also puts further limitations on what has to happen in that step. There's nothing in the Gandhi specification that says what the exhaust gas in some intermediate phase would be, because that's not even disclosed in their invention, whereas that is the heart of Beckman's invention. Thank you, Mr. Jacobs. We'll take the case unresolved. Thank you, Your Honors.